IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JEFFREY K. HENRY,

      Plaintiff,

v.

NORFOLK SOUTHERN RAILWAY
COMPANY,

      Defendant.

Case No. 2:12-cv-01159
JUDGE GREGORY L. FROST
Magistrate Judge Abel

## OPINION AND ORDER

This matter is before the Court for consideration of Defendant Norfolk Southern Railway Company's ("NSRC") motion for summary judgment (ECF No. 33), Plaintiff's memorandum in opposition (ECF No. 39), and NSRC's reply memorandum (ECF No. 41). For the reasons that follow, the Court **GRANTS** the motion.

### I.  BACKGROUND

Plaintiff began working for NSRC in 1980 as a laborer. In 1989, Plaintiff (while on-duty and traveling as a passenger in a vehicle) was injured in a car accident. Plaintiff missed seven years of work at NSRC following the accident, although he performed other work during this time.

Plaintiff returned to NSRC in 1996 as a conductor. Plaintiff performed that position until suffering the back injury in 2011 that is the subject of this lawsuit.

Between 1996 and 2011, Plaintiff experienced several back problems. In 2005, Plaintiff was taken, via ambulance, to Southern Ohio Medical Center after suffering acute back pain while tightening an engine break at work. According to his emergency room records from that date, Plaintiff described his pain as being localized in his lower back, severe, achy, and constant.

(ECF No. 33-3, at 3.)  Plaintiff was diagnosed with acute LS strain, back spasm, and "degenerative changes" to his back.  (*Id*. at 4, 7.)  Plaintiff was released with instructions to follow up with his family doctor or with a specialist.  (*Id*. at 7.)

Plaintiff's lower back issues reemerged in 2008.  On June 6, 2008, Plaintiff again sought treatment at Southern Ohio Medical Center for lower back pain, which he described as sharp, constant, and a 7 on the pain scale of 1–10.  (ECF No. 33-4, at 4, 6.)  Plaintiff was diagnosed with LS strain.  (*Id*. at 7.)

On October 18, 2009, Plaintiff "went down" after bending over to pick something up at his home.  (ECF No. 33-6, at 3.)  Plaintiff was taken, via ambulance, to Southern Ohio Medical Center, where he described his pain as sharp, constant, and a 6–7 on the pain scale.  (*Id*.)  Plaintiff was diagnosed with "degenerative changes" to his back, lumbar strain, and a probable disk bulge, and was instructed to follow up with his primary doctor.  (*Id*. at 5–8.)  Plaintiff missed approximately six months of work following this incident.  (Plaintiff Depo., ECF No. 39-1, at 69:2–7.)

Plaintiff returned to work in April or May 2010 in the same conductor position he previously held.  Following his return, Plaintiff spent most of his time at work at the Haverhill North Coke Company Facility ("Haverhill").  Plaintiff had worked at Haverhill prior to his 2009 injury, but it appears from his deposition testimony that he began to spend more time there after returning to work in 2010.  (*Id*. at 71–72; 77–80.)

On March 11, 2011, Plaintiff attempted to get out of a chair in the lunch room at work when his back went out again.  Plaintiff was taken to the Southern Ohio Medical Center, where he stated that his back "has gone out before."  (ECF No. 33-9, at 4.)  Plaintiff was diagnosed with lumbar strain, disk protrusions at L3-4, a disk bulge at L4-5, and "degenerative disk"

disease. (*Id*. at 5, 8.)  Importantly, Plaintiff's medical records state that his spine had an "overall similar appearance . . . compared with 2009 exam," although the disk bulge "may be slightly larger."  (ECF No. 33-10, at 3.)  Plaintiff did not return to work following the 2011 incident.

Plaintiff filed the present action on December 17, 2012 under the Federal Employers' Liability Act, 45 U.S.C. §§ 51–60 ("FELA").  In his Complaint, Plaintiff alleges that, "[i]n the course of his years of employment with NSRC, [his] job duties required that [he] walk on uneven, unstable ground, containing debris, which placed his back in awkward positions and placed excessive stress and strain on his back."  (ECF No. 2 ¶ 10.)  In particular, Plaintiff's job duties at Haverhill in 2010 and 2011 allegedly required him to walk on "uneven, unstable ground, containing debris."  (*Id*. ¶11.)  Plaintiff alleges that the uneven surface "required [him] to walk in an awkward position which exposed [him] to documental [sic] and recognized ergonomic risk factors to the back."  (*Id*. ¶ 10.)

It is unclear from the record whether the conditions at Haverhill differed significantly from the conditions at other sites to which Plaintiff was assigned during his twenty-plus years of employment with NSRC; however, Plaintiff testified that sites such as the Wheelersburg terminal and Portsmouth yard also contained uneven, unstable ground containing debris.  (Plaintiff Depo., ECF No. 39-1, at 118:8–17.)  It thus appears from Plaintiff's Complaint and testimony that he claims NSRC acted negligently throughout the course of his employment (i.e., from 1980 through 1989 and 1996 through 2011) by unreasonably subjecting him to uneven walking conditions at several job sites, which eventually caused his back problems.

NSRC moves for summary judgment on the ground that FELA's three-year statute of limitations bars Plaintiff's claim.  The Court addresses the parties' arguments below.

## II.     ANALYSIS

### A.  *Standard of Review*

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court therefore may grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc*., 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id*. (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).

Because the statute of limitations is an affirmative defense, NSRC bears the burden of proof in demonstrating that FELA's statute of limitations expired before Plaintiff filed his claim. *Campbell v. Grand Trunk W. R.R. Co*., 238 F.3d 772, 775 (6th Cir. 2001). If met, the burden then shifts to Plaintiff to establish that an exception applies. *Id*. (citing *Drazan v. United States*, 762 F.2d 56, 60 (7th Cir. 1985)).

Plaintiff argues in his brief that, in enacting FELA, Congress intended to preserve a plaintiff's right to a jury trial in all but the most extreme cases. But although "the benefit of a

4

jury trial is considered to be 'a goodly portion of the relief' which Congress has afforded railroad workers under [FELA] . . . 'it is still the function of the trial judge within narrowly prescribed limits to pass upon the sufficiency of the evidence.' " *Aparicio v. Norfolk & W. Ry. Co.*, 84 F.3d 803, 808 (6th Cir. 1996) (citing *Bailey v. Cent. Vermont Ry., Inc*., 319 U.S. 350, 353 (1943)). As such, if reasonable jurors could not disagree as to the facts underlying the conclusion that a plaintiff's claim is time-barred, then summary judgment is appropriate. *See id*.

### B. FELA

FELA is a " 'remedial and humanitarian statute ... enacted by Congress to afford relief to employees from injury incurred in the railway industry.' " *Id*. at 807 (quoting *Edsall v. Penn Cent. Transp. Co*., 479 F.2d 33, 35 (6th Cir.1973)). Under FELA, railroad companies

> shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51.

Despite its remedial nature, however, FELA contains a three-year statute of limitations. *See* 45 U.S.C. § 56. Specifically, "[n]o action shall be commenced within three years from the day the cause of action accrued." *Id*.

The question for the Court is the date on which Plaintiff's cause of action accrued. Generally, a plaintiff's claim accrues when the tortious event is committed. *Fonseca v. Consol. Rail Corp*., 246 F.3d 585, 588 (6th Cir. 2001). The Sixth Circuit recognizes, however, that "some injuries and causes are so latent as to elude discovery at the time of the injury-causing event." *Id*. As such, the discovery rule applies to claims for injuries that—like Plaintiff's—develop over time. *Id*. In such cases, the statute of limitations does not begin to run until a

reasonable person knows, or in the exercise of diligence should have known, both of the injury and the cause. *Id.*; *see also Aparicio*, 84 F.3d at 814 (adopting the Seventh Circuit's holding in *Fries v. Chicago & Nw. Transp. Co.*, 909 F.2d 1092, 1095–96 (7th Cir. 1990)).

The dispute in this case involves the 2011 episode in which Plaintiff's back went out while he was getting up from a chair and, specifically, whether that episode constitutes a new injury or a manifestation of Plaintiff's previously-diagnosed back injury. In the Sixth Circuit, courts must distinguish "between the aggravation of a time-barred injury and a claim that is distinct from previous injuries." *Campbell v. CSX Transp., Inc.*, No. 1:07cv841, 2009 WL 2709280, at *3 (S.D. Ohio Aug. 25, 2009) (citing *Fonseca*, 246 F.3d at 589). In other words, a manifestation or aggravation of an old injury does not become a new injury for purposes of FELA's statute of limitations. *See Aparicio*, 84 F.3d at 814. That is true regardless of whether the aggravation is more severe than the prior injury. *See, e.g., Mounts v. Grand Trunk R.R.*, 198 F.3d 578, 581 (6th Cir. 2000).

The question of whether a plaintiff's symptoms constitute a new injury or a manifestation of a time-barred injury turns on a common-sense interpretation of the facts of each case. Where the facts suggest that a plaintiff sustained injuries to different parts of his body, for example, the injuries will be treated as separate injuries for purposes of FELA's statute of limitations. *See, e.g, Campbell*, 2009 WL 2709280, at *3 (finding separate injuries where the plaintiff testified that the pain originated in different parts of his back). Similarly, the Sixth Circuit found a genuine issue of material fact as to whether a plaintiff suffered separate injuries when he experienced discomfort for three decades that was not continuous and would always subside by the next morning but eventually developed persistent pain that was diagnosed as carpal tunnel syndrome. *See Fonseca*, 246 F.3d at 590–591 (finding that the "cumulative effect" of the years

of discomfort was a separate injury for purposes of FELA's statute of limitations).  In reaching its *Fonseca* holding, the Sixth Circuit noted that it would not make sense to require a plaintiff to file suit within three years of experiencing his or her first ache or pain because, at that point, the injury would lack evidentiary support.  *Id*. at 592.

The Sixth Circuit reached the opposite conclusion in *Campbell v. Grand Trunk Western Railroad Co*., a case that is factually analogous to the present case.  238 F.3d 772.  In *Campbell*, the plaintiff experienced numbness and tingling (which was severe enough to awaken him from sleep) for several years before being diagnosed with carpal tunnel syndrome.  *Id*. at 775–76.  The court found that the statute of limitations began running when the plaintiff first experienced daily numbness and tingling, and not when he later was diagnosed with carpal tunnel syndrome.  *Id*. at 776.  *See also Mounts*, 198 F.3d at 582–83 (finding that a plaintiff's claim accrued at the time he was diagnosed with hearing loss and not on a later date when he became permanently disabled due to hearing loss).

As these cases show, to determine the point at which Plaintiff became "injured" for purposes of this statute of limitations analysis, the Court must determine the time at which his injury became legally cognizable.  *Compare Fonseca*, 246 F.3d at 592 (injury did not begin until years of temporary discomfort turned into continuous pain) *with Campbell*, 238 F.3d at 776 (injury occurred when the plaintiff began experiencing severe numbness and tingling on a daily basis).  *See also Urie v. Thompson*, 337 U.S. 163, 169 (1949) (holding that a plaintiff who breathed contaminated air for several years did not become "injured" for purposes of FELA's statute of limitations until "the accumulated effects of the deleterious substance manifest[ed] themselves").

To satisfy its burden of proof on this issue, NSRC points to Plaintiff's medical records and testimony, both of which suggest that his 2011 episode was a symptom of the degenerative back condition with which he previously was diagnosed. That is, the 2011 diagnosis for which Plaintiff is now claiming damages is the same or similar to the diagnoses Plaintiff received in 2005 and 2009. *Compare* ECF Nos. 33-3 & 33-6 *with* ECF No. 33-9. Stated differently, Plaintiff's medical records from the 2005, 2009, and 2011 episodes document the same degenerative back condition with similar (or slightly worsening) symptoms. Those medical records state that Plaintiff's spine did not change significantly between 2009 and 2011, see ECF No. 33-10, at 3, thereby suggesting that Plaintiff's condition remained constant during that time.[1]

Moreover, Plaintiff described the pain from the 2005, 2009 and 2011 episodes in the same or similar way (acute, constant, moderately severe lower back pain). The impetus of the 2009 and 2011 episodes was a similarly benign activity (bending over to pick up a paper in 2009 and getting out of a chair in 2011). Indeed, Plaintiff himself likened the 2011 episode to previous episodes when he informed medical personnel that his back "[had] gone out before." (ECF No. 33-9, at 4.) And finally, the immediate effect of the 2009 and 2011 episodes was the same or similar: Plaintiff missed six months of work following the 2009 episode and has yet to return to work following the 2011 episode. A common sense interpretation of this evidence compels the Court to conclude that Plaintiff's degenerative back condition became legally cognizable in 2005 or October 2009 at the latest. *Cf. Campbell*, 238 F.3d at 776.

Plaintiff attempts to rebut that conclusion by offering an affidavit from Dr. Robert D. Zaas stating that, in 2011, Plaintiff suffered a "symptomatic activation of preexisting lumbar degenerative disc disease when he attempted to get out of a chair at work." (ECF No. 39-4, at 1.)

---

[1] To the extent Plaintiff is arguing that is he recovered from his 2009 injury and then reinjured himself in 2011, that argument is not supported by the facts. *See id.*

But that statement actually supports NSRC's position.  On its face, Dr. Zaas' statement suggests that Plaintiff suffered from a degenerative back condition (diagnosed in 2005), a symptom of which manifested itself in 2011.  Symptoms, however, of a previously-diagnosed condition are not considered a new injury for purposes of FELA's statute of limitations.  *See, e.g., Mounts*, 198 F.3d at 580–82 (finding no separate injury when a plaintiff experienced worsened symptoms of a previously-diagnosed hearing condition).  Dr. Zaas' affidavit does not affect the Court's conclusion that Plaintiff's degenerative back condition became legally cognizable in October 2009 at the latest.

Plaintiff's argument that his 2011 episode constitutes a new injury for statute of limitations purposes because it was more severe than the 2009 episode similarly fails.  The premise of this argument is that, because Plaintiff was able to return to work after his 2009 episode but could not return to work after the 2011 episode, the two episodes must be separate injuries.  But the Sixth Circuit rejected that premise in *Mounts* when it held that a plaintiff (who was able to work after being diagnosed with hearing loss) did not suffer a new injury when, years later, his hearing loss rendered him permanently disabled.  *Id.*  The fact that Plaintiff's injury would lie dormant for a period of time before flaring up, while the *Mounts* plaintiff's hearing loss steadily decreased, does not change the underlying fact that, in both cases, the plaintiff suffered repeated (and worsening) symptoms of an injury with which he previously had been diagnosed.

For those reasons, the Court concludes that reasonable jurors could not disagree that Plaintiff's 2011 episode was a manifestation of the same degenerative back condition about which he was informed in 2005 and 2009.  Plaintiff therefore became "injured" for statute of limitations purposes in 2005 or October 2009 at the latest.

9

The question then becomes whether Plaintiff knew or should have known of the cause of his injury in October 2009. Plaintiff testified in his deposition that, as of 2008 and 2009, he understood that his job was causing some problems with his back. (Plaintiff Depo., ECF No. 39-1, at 42:8–11.) Admittedly, that statement is somewhat ambiguous because Plaintiff was involved in a work-related car accident several years earlier. But the purpose of the discovery rule is to "encourage an employee to inform himself about his condition and bring claims properly." *Mounts*, 198 F.3d 578 (quoting *United States v. Kubrick*, 444 U.S. 111, 122–23 (1979)). Plaintiff himself alleged that the conditions that allegedly caused his injury presented "document[ed] and recognized ergonomic risk factors to the back." (Compl. ¶ 10.) Following the 2009 episode, Plaintiff was obligated to inform himself about the conditions that could affect his degenerative back ailment, including recognized risk factors such as the uneven ground at work sites. Plaintiff therefore knew or reasonably should have known of his injury and its cause by October 2009. His Complaint, filed in December 2012, is time-barred. *See* 45 U.S.C. § 56.

### C. Allegations Regarding Haverhill Specifically

To this point, the Court has assumed that Plaintiff's claim for relief encompasses NSRC's alleged negligence in causing Plaintiff to walk on uneven ground throughout his twenty-plus years of employment. In his brief, however, Plaintiff suggests that the Haverhill conditions constitute a separate act of negligence that restarted the statute of limitations. Because Plaintiff began to spend a majority of his time at Haverhill in 2010 and 2011, Plaintiff argues that the statute of limitations did not begin to run until that time. Noticeably absent from Plaintiff's brief is any mention of the facts that he worked at Haverhill before the 2009 back incident, that (according to his testimony) similar conditions exist at other facilities, or that he specifically

alleged that NSRC required him to walk on uneven, unstable ground with debris "[i]n the course of his years of employment with NSRC."  (Compl. ¶ 9.)

Regardless of those facts, Plaintiff's argument fails under Sixth Circuit precedent, "which requires [him] to establish a separate injury, thereby satisfying the three-year statute of limitations, before the court may conduct an examination of liability."  *Mounts*, 198 F.3d at 581 (rejecting the plaintiff's argument that his time-barred injury occurred as the result of a separate tort within the statute of limitations period).  Because Plaintiff failed to establish that he suffered a separate injury in 2011, he cannot now argue that any aggravation he suffered at that time was the result of a separate tort.  *See id.*; *see also Urie*, 337 U.S. 163, 170 (1949) (rejecting, in a case involving exposure to silica dust, the plaintiff's contention that "each intake of dusty breath is a fresh cause of action" (internal quotations omitted)).  NSRC therefore met its burden in proving that FELA's three year statute of limitations bars Plaintiff's claim.

### III.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** NSRC's motion for summary judgment.  (ECF No. 33.)  The Clerk is **DIRECTED** to enter judgment accordingly and terminate this case from the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED**.

    /s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE